The Supreme Court reversed the decree of the Quarter Sessions on May 29, 1885, in the following opinion per:
Clark, J.
This case is brought here upon a certiorari, and in the consideration of it we are necessarily confined to such questions as are *172 raised upon the record.. The proceeding is.for the formation of an independent common school district in the County of Montgomery. It is contended on the one hand that the record is defective and incomplete ; that certain material facts, the existence of which is essential in the formation of an independent district are not averred in the petition, are not set forth in the commissioners’ report, and do not appear to have been adjudged by the Court; and that, the decree is therefore erroneously entered. On the other hand, it is contended that the subject matter is clearly within the jurisdiction; that the proceedings are in regular form and in strict conformity with the absolute requirements of the statute.
Independent common school districts can now be created only under the Act of 8th of May, 1855, and the amendment thereto of 20th May, 1857. It is conceded that if the proceedings were conducted under the provisions of the Act of 8th May, 1855, alone, the record is full and complete. The contention turns therefore upon the effect of the Act of 20th May, 1857.
The sections of the Acts of Assembly referred to, so far as they have any relevance to the question involved, are as follows:
Act 5th May, 1855, Sec.-5: “Upon petition of not less than twenty taxable inhabitants of any township or townships desiring the formation of the territory upon which they reside' into a separate and independent common school district, the Court of Quarter Sessions of the proper County shall appoint commissioners to view the premises,-and report to the Court at its next term the lines of the proposed new district, either according 'to the bounds set forth in the petition or to such other bounds as they shall think more advisable, together with their opinion on the expediency of establishing or not establishing the same ; the proceedings upon which petition, commissioners’ report, and the final disposition thereof, shall in all other respects be according to the Act of Assembly now in force, relative to the erection of new townships.”
Act 20th May, 1857, Sec. 1: “The true intent and meaning of the provisions of the supplement to the general school law, approved the 8th day of May, 1855, for the creation of independent school districts, was and is to provide in a guarded manner for *173 exceptions to the general rule, and to protect and promote the educational welfare of occasional localities that from natural or other adequate obstacles could not be properly provided for under the organization of township districts; and further, it w*as not the intention to cut.up townships into single school districts, nor to carve out the wealthier from the poorer portions of the township or townships to the prejudice of the lights and interests of the latter. * * And hereafter no independent district shall be created in any case without the unanimous concurrence of the Court.” The Act of 1857 is entitled “An Act declaratory of the powers of the Courts of Quarter Sessions to create independent school districts,” and is but the legislative interpretation of .the Act of 1855. The distinctly exceptional cases, to which the latter Act is to be confined, are in the amendatory Act definitely declared. The provisions of the Act of 1857, as applicable to cases arising since its passage, are therefore to be read into the body or between the lines of the Act of 1855, as if they were cotemporaneous and were parcel of its provisions. Therefore, where no natural or other adequate obstacle prevents proper provision in the general common school organization of a township, no independent school district can be created. The existence of such an obstacle is an affirmative, substantive and essential fact in the proceeding ; a fact which must appear in order to obtain a decree. Every substantive material and affirmative fact which, by the express language of the statute law, is made indispensable in the proof, should be averred, or should appear in the record. The judgment or decree of a Court is but the conclusion of the law upon the facts contained within the record, and it follows that the record should declare the premises from -which the conclusion may logically and legally result. In this, case it is not averred in the petition, nor is it set forth in the commissioners’ report, that, from any natural or other adequate obstacle, the locality in question cannot be properly provided for in the organization of the township districts. It cannot therefore be deemed to have been adjudged in the decree.
In the case at bar, the commissioners in their report find that “after due consideration and full inquiry on the expediency of establishing or not establishing an independent school district, *174 they are of opinion that it is expedient/’ &c.; and the Court, after having duly considered the report and the testimony taken, adjudge that it is expedient, and a decree for the formation of the district is thereupon entered according to the lines reported. This admittedly conforms to all the requirements of the Act of 1855, as originally enacted, but falls far short of its meaning as ■declared in the Act of 1857. It may be expedient to form a district where there is no real necessity for it; but necessity, not ¡mere expediency, is the rule according to which the right is to be determined.
The facts which will justify a Court in an interference with the general organization of the schools are particular and specific, and they should so appear. The record should exhibit the nature of the obstacle alleged, which, whether natural or artificial, •cannot be of any other than a physical character. No difference in race or religion, no supposed social or political incompatibility, ¡no consideration of wealth or poverty, of intelligence or ignorance, can be recognized as furnishing any adequate obstacle to the-general organization under the discretion of the boaid of ¡school directors. It is one of the most beneficent purposes of our general system of popular education that all classes and conditions of society, irrespective of the considerations referred to, shall be taught in the same schools. The tendency and effect of such a system is to obliterate, or at least to solidify and strengthen, the seams which must otherwise permeate our civil and social affairs, to assimilate our varied population, and to cultivate that tolerance and equality which is the distinguishing characteristic of the government under which we live.
The.general regulation of our common schools has been wisely given to the various boards of school directors and controllers throughout the State. The- establishment of independent, districts often operates as a serious derangement of that general ■organization, affects the location of school houses, and creates serious local disputes, to the'great disparagement of the system. They are therefore not encouraged; under the general Act of 1854, all laws relating to or creating them wore repealed, and the plain policy of the law since that repeal is to provide in' a *175 guarded manner for exceptional cases only. Such lias been the expression of this Court in a number of eases.
In Conley v. School Directors of West Deer Township, 8 Cas. 196 this Court said: “The policy of the Legislature has always been to establish a uniform system of common schools. Independent school districts and sub-districts have indeed been allowed as exceptions — as excrescences upon a system which would otherwise have been uniform ; they have, not been encouraged. This is emphatically declared by the Act of May 20, 1857.”
In Independent School District Sewiekley Township, 9 Casey 300, 301, it was said of the Act just referred to : “It declares such districts to be against the general policy of the law, and it was designed to impose new obstacles in the way of their continuance rather than to facilitate their creation.”
We are of the opinion that the decree in this case was wrongly entered.
The proceedings and decree of the Quarter Sessions are therefore reversed, and the record remitted.